UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Cristiana Lopes, | 3:17-cv-00820 (WWE) |
| Plaintiff, | |
| v. | |
| Brazilian Travel Service, Ltd., and Joao De Matos | |
| Defendants | August 21, 2017 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR JUDGMENT ON DEFAULT**

**I.   INTRODUCTION**

A default was entered in this matter against the defendants Brazilian Travel Service, Ltd., and Joao De Matos, on July 25, 2017, for failure to plead or otherwise defend. [Document 8] Pursuant to Fed.R.Civ.P. 55(b)(2) and the Court's order, the plaintiff now respectfully requests the Court to enter judgment on the default for the reasons and in the amounts set out below.

**II.   FACTS RELEVANT TO THE MOTION**

The plaintiff, Cristiana Lopes, was employed by defendant Brazilian Travel Service, Ltd.,from in or about March 2006 until on or about February 22, 2017. (Affidavit of Cristiana Lopes, ¶¶ 1-2, attached hereto as Plaintiff's Exhibit 1) Brazilian Travel Service, Ltd., is an air travel booking consolidator headquartered in New York City, with branches in Connecticut, New Jersey and Massachusetts, and São Paulo, Brazil. (Id., at ¶ 2)

Defendant Joao De Matos is the Chief Executive Officer of Brazilian Travel Service, Ltd. (Id., at ¶ 3) During the plaintiff's employment, De Matos had final responsibility for hiring, firing, promotions, personnel matters, work schedules, pay policies, and compensation. (Id.)

During the plaintiff's employment by Brazilian Travel Service, Ltd., in its Danbury, Connecticut office, there were never any posed notices showing the Connecticut minimum wage or the federal and Connecticut requirements for payment of overtime wages. (Id., at ¶ 4) During her employment, the plaintiff was not aware of her right to be paid the Connecticut minimum wage for each hour of her work, nor was she aware of her right to be paid one and one-half times her regular hourly rate for all hours worked above forty in a single week. (Id., at ¶ 5)

Although Brazilian Travel Services, Ltfd., maintained time clocks for employees to log in and out during the work day, neither the plaintiff nor her co-workers was permitted to see or provided with any record of the total number of hours that she or they worked each week. (Id., at ¶ 6) On occasions when the plaintiff complained that she had not been paid for all of the hours she worked, Brazilian Travel Services, Ltd., did not provide her with any evidence showing the manner in which it calculated her hours worked or her wages. (Id., at ¶ 7)

The plaintiff typically worked forty-six (46) hours each week. Her workweek was eight hours a day, Monday through Friday, and six hours on Saturday. (Id., at ¶ 8)

From the beginning of her employment until on or about September 7, 2015, the plaintiff was paid the flat sum of three hundred and fifty dollars ($350.00) a week. (Id., at ¶ 9) From on or about September 7, 2015, until the end of her employment on February 22, 2017, the plaintiff was paid twelve dollars ($12.00) an hour for the first forty hours of work, and six

dollars ($6.00) an hour for the six hours that she worked on Saturdays, for a total weekly wage of $528.00. (Id., at ¶ 10)

As an air travel booking consolidator, tBrazilian Travel Services, Ltd., would frequently receive "Agency Debit Memos" (ADM's) from airlines. (Id., at ¶ 11) ADM's are issued by airlines to travel agents when an air travel ticket has been issued and its rules have not been fully complied with. (Id.) The ADM seeks payment of the difference between the price paid for the airline ticket and the actual value of the ticket. (Id.) When an ADM was issued to Brazilian Travel Services, Ltd., it would deduct the amount of the ADM from the wages of employees, including the plaintiff. (Id., at ¶ 12)

The deduction of the ADM's from the plaintiff's wages were not authorized by her nor was she ever told that the deduction was required by law. (Id., ¶ 13) The plaintiff believed, based on statements made to her by managers and co-workers, that if she objected to the deduction of AMD's from her wages she would be terminated. (Id., at ¶ 14) In some weeks of the plaintiff's employment, the deduction of ADM's from her wages resulted in the plaintiff receiving less than the applicable Connecticut minimum wage for her work. (Id., at ¶ 15) The total of monies deducted from the plaintiff's pay for ADM's was at least $1,342.95. (Id., at ¶ 16)

Brazilian Travel Services, Ltd., was aware of the requirements that it pay its employees the minimum wage and that it pay them overtime premium pay. (Id., at ¶ 17) The defendant falsely stated to the plaintiff that because she was working in Connecticut instead of the company's New York office, her wages were calculated differently. (Id.)

In the period from in or about March 2006 until on or about September 7, 2015, Brazilian Travel Services, Ltd., supervisors told the plaintiff on multiple occasions that because of her immigration status at that time, if she complained about her wages she would lose her job. (Id., at ¶ 18)

According to a website maintained by the Connecticut Department of Labor[1], the minimum hourly rates in effect during the first nine years of the plaintiff's employment were:

    January 1, 2006 - $7.40

    January 1, 2007 - $7.65

    January 1, 2009 - $8.00

    January 1, 2010 - $8.25

    January 1, 2014 - $8.70

    January 1, 2015 - $9.15

During that nine year period from March 2006 until September 7, 2015, Brazilian Travel Services, Ltd., failed to pay the plaintiff all of the wages that she earned. (Id., at ¶ 20) The calculation of the wages earned by the plaintiff in each week of her employment during this period, and the difference between her earned wages and the wage actually paid by the defendant is set out below:

    2006: (40 hrs/wk x $7.40 = $296) + (6 hrs/wk x $7.40 x 1.5 = $66.06) = $362.60

        $362.60 earned – $350.00 paid = $12.60/week x 43 weeks = $541.80

    2007: (40 hrs/wk x $7.65 = $306) + (6 hrs/wk x $7.65 x 1.5 = $68.85) = $374.85

---

[1] http://www.ctdol.state.ct.us/wgwkstnd/wage-hour/history.htm

4

$374.85 earned – $350.00 paid = $24.85/week x 52 weeks = $1,292.20

2008: (40 hrs/wk x $7.65 = $306) + (6 hrs/wk x $7.65 x 1.5 = $68.85) = $374.85

$374.85 earned – $350.00 paid = $24.85/week x 52 weeks = $1,292.20

2009: (40 hrs/wk x $8.00 = $320) + (6 hrs/wk x $8.00 x 1.5 = $72.00) = $392.00

$392.00 earned – $350.00 paid = $42.00/week x 52 weeks = $2,184.00

2010: (40 hrs/wk x $8.25 = $330) + (6 hrs/wk x $8.25 x 1.5 = $74.25) = $404.25

$404.25 earned – $350.00 paid = $54.25/week x 52 weeks = $2,821.00

2011: (40 hrs/wk x $8.25 = $330) + (6 hrs/wk x $8.25 x 1.5 = $74.25) = $404.25

$404.25 earned – $350.00 paid = $54.25/week x 52 weeks = $2,821.00

2012: (40 hrs/wk x $8.25 = $330) + (6 hrs/wk x $8.25 x 1.5 = $74.25) = $404.25

$404.25 earned – $350.00 paid = $54.25/week x 52 weeks = $2,821.00

2013: (40 hrs/wk x $8.25 = $330) + (6 hrs/wk x $8.25 x 1.5 = $74.25) = $404.25

$404.25 earned – $350.00 paid = $54.25/week x 52 weeks = $2,821.00

2014: (40 hrs/wk x $8.70 = $348) + (6 hrs/wk x $8.70 x 1.5 = $78.30) = $426.30

$426.30 earned – $350.00 paid = $76.30/week x 52 weeks = $3,967.60

2015: (40 hrs/wk x $9.15 = $366) + (6 hrs/wk x $9.15 x 1.5 = $82.35) = $448.35

$448.35 earned – $350.00 paid = $98.35/week x 35 weeks = $3,442.25

(Id.) The total wages earned by the plaintiff but not paid by the defendant in the period from the beginning of her employment until September 7, 2015, is $22,711.25. (Id.)

During the seventy-six week (76) period from September 7, 2015, until February 22, 2017, Brazilian Travel Services, Ltd., the defendant (mostly) paid the plaintiff at a rate greater than the applicable Connecticut minimum wage, but fail to pay the plaintiff at least the

Connecticut minimum wage for hours worked on Saturdays and failed to pay the plaintiff overtime wages. (Id., at ¶ 21) The difference between the weekly amount paid to the plaintiff and the amount of wages that she earned each week, including overtime premium pay, is set out below:

(40 hrs/wk x $12 = $480) + (6 hrs/wk x $12 x 1.5 = $108.00) = $588.00

$588.00 earned – $528.00 paid = $60.00/week x 76 weeks = $4,560.00

(Id.)

The total of minimum wage payments, overtime wage payments, and unauthorized deductions from the plaintiff's wages, over the term of her employment by defendant Brazilian Travel Services, Ltd., is: $1,342.95 + $22,711.25 + $4,560.00 = $28,614.20. (Id., at ¶ 22).

## III.   DISCUSSION

Where a district court has entered a default, "for any valid cause of action in the . . . complaint, the only issue remaining is whether plaintiffs have supplied adequate support for the damages they seek." *Kuruwa v. Meyers*, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011). The Federal Rules of Civil Procedure specify that, where a judge considers a motion for judgment on a default, "[t]he court *may* conduct hearings or make referrals" as needed in order to ascertain damages. Fed.R.Civ.P. 55(b)(2) (emphasis added). The Second Circuit has explained, however, that in considering such a motion "it was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment." *Fustok v. Conticommodity Services, Inc.*, 873 F.2d 38, 40 (2nd Cir. 1989) (finding that an affidavit provided by the moving party's counsel was adequate to support a default judgment).

The plaintiff brought this action seeking, *inter alia,* compensation owed to her by her former employer under federal and state laws for minimum wages, overtime wages, and unauthorized deductions from wages; double damages as to those wages under both federal and state law; and reasonable attorney's fees and costs pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. and Conn.Gen.Stat. §31-68 and §31-72*.* As the plaintiff now demonstrates, she has properly alleged causes of action and has provided herewith sufficient evidence in the form of affidavits by the plaintiff and his legal counsel to support the claims for damages.

> A.   **Plaintiff's claims for non-payment of wages**

"In general, the FLSA provides that an employee who works more than forty hours in a given week is entitled to compensation at 'one and one-half times the regular rate at which he is employed.'" *Costello v. Home Depot USA, Inc.*, 944 F.Supp.2nd 199, 203 (D. Conn. 2013) (quoting, 29 U.S.C. §207(a)).

> Although a plaintiff normally " has the burden of proving that he performed work for which he was not properly compensated," when an employer has " inaccurate or inadequate" records, the plaintiff " has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Mt. Clemens, 328 U.S. at 687. Sufficient evidence may be established by " recollection alone." Doo Nam Yang v. ACBL Corp., 427 F.Supp.2d 327, 335 (S.D.N.Y. 2005); see also Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) (" It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet this burden through estimates based on his own recollection." ). " The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Mt. Clemens, 328 U.S. at 687-88.

*Solis v. SCA Rest. Corp.*, 938 F.Supp.2d 380, 394 (E.D.N.Y. 2013).Here, the plaintiff

has provided a sworn affidavit setting out her knowledge and recollection of the hours that she worked and the wages she was paid. As the matter is before the Court on a motion for judgment on default, plainly, there is no evidence from the defendants countering the plaintiff's calculations.

There are three aspects to the plaintiff's claim for unpaid wages. First, to the extent that the defendants paid the plaintiff less than the applicable Connecticut minimum wage, they are liable for the difference. The plaintiff states that she worked forty-six hours a week, and that for the first nine years of her employment she was paid only $350.00 a week. Even without considering the calculation of overtime, the plaintiff's regular hourly rate would have been only $7.61 – less than the Connecticut minimum wage for every year at issue after the first nine months of her employment. During the final year and a half of her employment, even though the defendant paid the plaintiff greater than the minimum wage for the first forty hours of her work, the defendant paid the plaintiff at the rate of only $6.00 an hour for the six hours that she worked on Saturdays – again, far less than the Connecticut minimum wage at that time.

Second, at no time during the plaintiff's employment was she paid overtime premium pay, even though she worked six hours of overtime every week of her employment. The defendants' failure to pay the plaintiff overtime is a violation of both the federal Fair Labor Standards Act, 29 U.S.C. §207, and Connecticut General Statutes §31068, both of which require the employer to pay an employee at one and one-half times her regular rate (but never less than the applicable minimum wage) for

every hour in excess of forty hours in a one week period.

Finally, the plaintiff recounts in her affidavit that the defendants regularly deducted from her pay the amounts that the employer was charged on Agency Debit Memos (ADM's). These were not authorized deductions, and in some instances the amount of these deductions even brought the plaintiff's actual hourly wage in a given week below the Connecticut minimum wage. Even where they did not bring the plaintiff's wages below the legal hourly minimum, the process of making these unauthorized deductions was a violation of Connecticut statutes, incliuding Conn.Gen.Stat. §31-71e (withholding of part of wages), §31-73 (prohibiting employer kickbacks from wages as a condition of employment), and §31-74 (prohibiting the scaling of wages). All of these violations, even where they do not directly implicate the Connecticut minimum wage, are actionable under Connecticut's general wage payment statute, Conn.Gen.Stat. §31-72.

As set out in detail above, and in the plaintiff's affidavit, the calculation of the minimum wages, overtime wages, and repayment of unlawful deductions owed to her amount to a total of $28,614.20. (Pl.Ex. 1, ¶¶ 16, 20-22)

      **B.**    **Equitable Tolling of the Plaintiff's Statute of Limitations**

The Fair Labor Standard Act provides a two year statute of limitations, which may be extended to three years where the employee is able to show (as the plaintiff does here) that the employer's violation of the Act was willful, while Connecticut claims for wages have a two year statute of limitations. *Morales v. Gourmet Heaven*, Docket

No. 3:14-cv-01333 (VLB), at *5.[2] However, in considering circumstances analogous to those presented here, courts have applied equitable tolling to an employee's claims for unpaid wages in violation of the FLSA. In *Gourmet Heaven*, Judge Bryant ruled that a statute of limitations on FLSA and Connecticut wage claims is an affirmative defense that must be raised by the defendant, and where it has not been pleaded it is deemed waived. *Id.*, at *6. However, Judge Bryant also observed that district courts have sometimes applied the principles of equitable tolling to relieve a plaintiff seeking unpaid wages from her statute of limitations. *Id.* The facts of this case strongly support equitable tolling.

> In addition to the statutory toll, a court can toll the statute of limitation to avoid inequitable circumstances. Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996); see also Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998) (unless explicitly stated otherwise by statute, equitable tolling should be "read into every federal statute of limitations."); Holmberg v. Armbrecht, 327 U.S. 392, 66 S. Ct. 582, 90 L. Ed. 743 (1946) (noting that the doctrine of equitable tolling has also been applied where the pertinent statute of limitations was a state statute).

*Asp v. Milardo Photography Inc.*, 573 F.Supp. 2D 677, 697 (D.Conn. 2008).

In the present matter, the plaintiff alleges in her affidavit these facts in support of her request that the Court toll the applicable federal and state statutes of limitation:

1.   The defendants failed to post notices that would have apprised the plaintiff of her right to be paid the Connecticut minimum wage and her right to be paid overtime premium pay. (Pl.Ex. 1, ¶ 4);

2.   The plaintiff was otherwise unaware of these rights during her employment. (Pl.Ex. 1, ¶ 5);

---

2   Unpublished decisions cited by the plaintiff are attached hereto.

3. Although the defendants maintained time clocks for the plaintiff and other employees to submit their work time, the plaintiff and her co-workers were not permitted to see any print outs or other evidence showing the actual number of hours that they allegedly worked or the calculation or payment of their wages. (Pl.Ex. 1, ¶ 7);

4. The defendants falsely informed the plaintiff that her wages were calculated differently in Connecticut than they would have been in New York, and that was why she did not receive overtime wages. (Pl.Ex. 1, ¶ 17); and

5. The defendants threatened the plaintiff that if she complained of not being paid all of her wages, she would be deported.

These allegations support the Court's tolling of the statutes of limitation applicable to this case under federal and Connecticut law.

**C.  Liquidated and/or double damages under the FLSA and Connecticut law**

The defendants' failure to pay the plaintiff the applicable Connecticut minimum wage and failure to pay the plaintiff one and one-half times her regular hourly rate of pay for hours worked in excess of forty hours in a one week period violates the overtime wage provision of the federal Fair Labor Standards Act, 29 U.S.C. §207 and the minumum wage and overtime wage procisions of Conn.Gen.Stat. §31-68. The defendants' conduct, including making unauthorized and unlawful deductions from the plaintiff's wages, also violates Conn.Gen.Stat. §31-71b, which requires employers to pay the full amount of wages due to their employees each week, and which may be enforced by a claim for wages owed under Conn.Gen.Stat. §31-72.[3]

---

3  Conn.Gen.Stat. §31-71b states "Each employer, by himself, his agent or representative, shall pay weekly all moneys due each employee on a regular pay day, designated in advance by the employer, in cash, by

11

Both the federal and state wage and hour statutes provide for payment of double damages when an employer fails to pay minimum wages, overtime wages, and (in the case of Connecticut law) any wages owed. Federal courts have held that the Fair Labor Standards Act sets a low threshold for such an award: "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 142 (2nd Cir. 1999). The Connecticut statutes, following their amendment in 2015, similarly require that the Court award double damages barring a showing by a defendant that it acted in good faith. Conn.Gen.Stat. §31-72. On this motion for a default judgment, there exist no offer by the defendants to show that they acted in good faith in paying the plaintiff.

The double damages provisions of the FLSA and Connecticut law were intended to serve different functions and therefore both may be awarded to a plaintiff who meets the applicable standards. *Morales v. Cancun Charlie's Rest.*, 2010 U.S. Dist. LEXIS 125516, *26 (D. Conn. 2010). For this reason, the plaintiff is entitled to an award of triple the amount of any unpaid wages – his unpaid wages, FLSA double damages, and double damages under Connecticut law.

Thus, the plaintiff's unpaid wages, FLSA double damages, and double damages under Connecticut law total:

```
      $28,614.20
      $28,614.20
   +  $28,614.20
      $85,842.60
```

---

negotiable checks or, upon an employee's written request, by credit to such employee's account in any bank which has agreed with the employer to accept such wage deposits."

### D. Plaintiff's claims for reasonable attorney's fees and costs

The Fair Labor Standards Act and Conn.Gen.Stat. §31-68 and §31-72 each mandate the payment of reasonable attorney's fees and costs where an employer has failed to pay wages. As pointed out above, there is no evidence of good faith that would call into question an award of reasonable attorney's fees and costs.

As set out in the attached affidavit, Attorney Goselin requests to be compensated for his work in this case at the rate of $400.00 an hour, and states that he reasonably expended 13.60 hours in this litigation to the present time, for a total reasonable attorney fee of $5,440.00. (Affidavit of Attorney Peter Goselin, attached hereto as Plaintiffs' Exhibit 2) The plaintiff also seeks her costs relevant to the litigation: the filing fee to initiate this action – $400.00 – plus the cost of service on the defendants – $90.00 – for a total of $490.00. (Id.)

Plaintiff therefore seeks an award of $5,930.00.  In support of this request, plaintiff's counsel provides in addition to his affidavit, contemporaneous time records and a bill of costs. (Time Records and Bill of Costs, attached hereto as Plaintiffs' Exhibit 3;)

### IV. CONCLUSION

For the reasons set out above, the plaintiff respectfully requests that the Court enter a judgment on the default in the following amounts:

| | |
|---|---|
| Cristiana Lopes | $85.842.60 |
| <u>Attorney's fees and costs</u> | <u>$ 5,930.00</u> |
| **Total** | **$91,772.60** |

RESPECTFULLY SUBMITTED
THE PLAINTIFF, by


_/ s / Peter Goselin_
Peter Goselin ct06074
The Law Office of Peter Goselin
557 Prospect Avenue, 2nd Floor
Hartford, Connecticut 06105
Tel. 860-580-9675
Fax 860-232-7818
pdgoselin@gmail.com

**CERTIFICATE OF SERVICE**

    This is to certify that on August 21, 2017, the foregoing Memorandum in Support of Plaintiff's Motion for Judgment on the Default and Exhibits thereto were filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                            _/ s / Peter Goselin_